# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2012AP1949-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Michael G. Trewin, Attorney at Law:<br><br>Office of Lawyer Regulation,<br>      Complainant-Respondent,<br>   v.<br>Michael G. Trewin,<br>      Respondent-Appellant. |

DISCIPLINARY PROCEEDINGS AGAINST TREWIN

| | |
|---|---|
| OPINION FILED: | October 7, 2014 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | April 9, 2014 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | |
|   COUNTY: | |
|   JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | |
|   DISSENTED: | |
|   NOT PARTICIPATING: | |

ATTORNEYS:

For the respondent-appellant, there were briefs and oral argument by *Michael G. Trewin*, New London.

For the complainant-respondent, there was a brief and oral argument by *Julie M. Spoke* of the *Office of Lawyer Regulation*.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.  2012AP1949-D

STATE OF WISCONSIN                    :          IN SUPREME COURT

**In the Matter of Disciplinary Proceedings
Against Michael G. Trewin, Attorney at Law:**

**Office of Lawyer Regulation,**

        **Complainant-Respondent,**

   **v.**

**Michael G. Trewin,**

        **Respondent-Appellant.**

**FILED**

**OCT 7, 2014**

Diane M. Fremgen
Clerk of Supreme Court

ATTORNEY disciplinary proceeding.  *Attorney's license revoked.*

¶1  PER CURIAM.  Attorney Michael G. Trewin has appealed from the report of the referee, Reserve Judge Robert E. Kinney, which concluded that Attorney Trewin had committed ethical violations as alleged in 14 counts of the Office of Lawyer Regulation's (OLR) complaint and recommended the revocation of Attorney Trewin's license to practice law in Wisconsin.  The referee also recommended that Attorney Trewin be ordered to pay

the full costs of this proceeding, which were $33,145.83 as of April 24, 2014.

¶2 Having heard oral argument and having fully reviewed this matter, we determine that the referee was correct in concluding, after a three-day evidentiary hearing, that Attorney Trewin had committed 14 counts of professional misconduct. Many of those counts of misconduct fall into the same pattern of using knowledge of clients' financial weaknesses to take advantage of those clients in business transactions with them. We therefore determine that Attorney Trewin's license to practice law in this state must be revoked. Given the disarray in Attorney Trewin's records, we are unable to impose specific restitution amounts in this disciplinary proceeding, although we note that two sets of clients have pursued civil actions against Attorney Trewin. Finally, we require Attorney Trewin to pay the full costs of this proceeding.

¶3 Attorney Trewin was admitted to the practice of law in Wisconsin in June 1985. He has maintained a law practice in New London. He has historically focused his practice on bankruptcy and debt reorganization.

¶4 Attorney Trewin has been the subject of professional discipline on two prior occasions. In 2004 this court suspended Attorney Trewin's law license for a period of five months. In re Disciplinary Proceedings Against Trewin, 2004 WI 116, 275 Wis. 2d 116, 684 N.W.2d 121 (Trewin I). The misconduct that led to that suspension included (1) entering into loan transactions with at least seven clients without obtaining

written, informed conflict waivers, in violation of SCR 20:1.8(a); (2) entering into such loan transactions without having advised his clients of the potential adverse consequences, in violation of SCR 20:1.7(b); (3) having engaged in conduct involving dishonesty or misrepresentation by assigning his interest in a loan to his brother-in-law in order to avoid disclosing that he was the real party in interest, in violation of SCR 20:8.4(c); (4) failing to file timely income tax returns, in violation of prior case law and SCR 20:8.4(f); and (5) having deposited a client check into his business account rather than his client trust account, in violation of SCR 20:1.15(a). In our Trewin I decision, we quoted the referee's comment that the frequency and magnitude of Attorney Trewin's loan and business transactions with his clients were such common occurrences that they made it "look as though he was more of a banker than a lawyer." 275 Wis. 2d 116, ¶40.

¶5 In 2006 Attorney Trewin received a public reprimand with his consent. The misconduct underlying that reprimand consisted of failing to list all of his pending matters in the affidavit he was required to file with the OLR following his 2004 disciplinary suspension, failing to notify courts and opposing counsel of his disciplinary suspension, and engaging in a conflict of interest by representing two clients in a bankruptcy proceeding when that representation was directly adverse to the interests of another client. Public Reprimand of Michael G. Trewin, No. 2006-6.

3

¶6 The present disciplinary proceeding relates to Attorney Trewin's relationships and business transactions with three married couples: (1) R.V.S. and B.V.S. (collectively, Mr. and Mrs. V.S. or the V.S.s); (2) D.H. and M.H. (collectively, Mr. and Mrs. H. or the H.s); and (3) Francis and Karen Groshek (collectively, the Grosheks).[1] The referee in this matter issued a thorough 58-page report with detailed findings of fact and conclusions of law regarding Attorney Trewin's actions concerning each of the three sets of clients. We will not repeat all of those factual findings in this opinion. It is sufficient here to summarize the pattern that Attorney Trewin generally followed in dealing with the three couples whose grievances led to this disciplinary proceeding and to set forth the rule violations that arose from that conduct.

¶7 The referee found that Attorney Trewin had attorney-client relationships with all three couples during the relevant

---

[1] This court's general practice is to use the initials of clients in attorney disciplinary opinions to protect their privacy to some extent since they did not ask to be the alleged victims of attorney misconduct. We use the Grosheks' full names in this opinion because they were already named parties in a civil action they pursued against Attorney Trewin, which ultimately resulted in a published decision and order from this court. Groshek v. Trewin, 2010 WI 51, 325 Wis. 2d 250, 784 N.W.2d 163. The OLR and Attorney Trewin stipulated that the referee could use the record of that litigation as the factual record for the counts relating to the Grosheks in this disciplinary proceeding. Since citation to this court's decision in that civil case would disclose their names in any event, there is no reason to use the Grosheks' initials rather than their names in this opinion.

time periods. The attorney-client relationships with Mr. and Mrs. V.S. and with Mr. and Mrs. H. were long-standing ones, stretching back to points before the filing of the complaint in Trewin I. Indeed, the referee found that Attorney Trewin's attorney-client relationship with Mr. and Mrs. H. extended back to 1991. The referee made clear in his report, however, that he was not considering any specific facts that pre-dated the filing of the complaint in Trewin I.

¶8 The referee found that each of the three couples was financially unsophisticated, which caused them to rely on Attorney Trewin's recommendations. He stated that Attorney Trewin had followed a similar pattern of conduct with respect to each client couple.

¶9 Each couple initially retained Attorney Trewin when they were facing legal problems regarding their debts, either in the context of a foreclosure proceeding or a possible bankruptcy. Because of each couple's financial problems, they had difficulty obtaining loans in traditional credit markets—i.e., from banks, credit unions, etc.

¶10 Attorney Trewin usually loaned the couples money, often at relatively high interest rates (12-14%), starting with fairly small amounts and increasing the amount of the loans over time as the couples needed additional funds. The referee further found that because Attorney Trewin was not constrained by standard banking regulations, the clients did not receive many of the pieces of information and the warnings that they would have received when borrowing from traditional lenders.

5

Moreover, there were many errors in the documentation of the loans and the tracking of payments.

¶11 In some instances, either there were no signed promissory notes and conflict waivers, or Attorney Trewin lost those documents since he was unable to produce them during this disciplinary proceeding. In at least one other instance, the date on the conflict waiver was months apart from the date of the purportedly corresponding promissory note. Also, when Attorney Trewin was able to produce a signed document purporting to be a conflict waiver, the description of the transaction in the conflict waiver was, at times, not even consistent with the loan terms set forth in the promissory note. Further, the referee specifically found that the conflict waivers did not disclose all of the true facts regarding the transactions, did not provide any meaningful explanation of the disadvantages of entering into these transactions with the clients' lawyer, and did not include a discussion of the alternatives available to the clients.

¶12 Attorney Trewin's haphazard manner of handling these transactions left the clients confused about which loans were outstanding, what payments they had made toward which loans, and the balances of their loans. For example, both Mr. and Mrs. V.S. and Mr. and Mrs. H. repeatedly asked Attorney Trewin for an accounting, but he did not provide them with one. When counsel for the OLR asked Attorney Trewin at the evidentiary hearing whether he had ever produced an accounting to Mr. and Mrs. V.S., he responded that he did not know. He claimed that

6

he had a spreadsheet on his computer that showed a running tally or documentation of the loans to Mr. and Mrs. V.S.  Attorney Trewin then referenced an exhibit, which he claimed was a printed version of this spreadsheet.  The referee, however, found that the exhibit "is replete with omissions and unexplained entries, and is essentially undecipherable, even by [Attorney Trewin]."  When Attorney Trewin was asked at another point during the evidentiary hearing how much money he had loaned Mr. and Mrs. V.S., he did not provide an answer but promised he would provide the information to the referee the following day after putting all of their payments into a spreadsheet.  No further documentation on this subject was provided by Attorney Trewin during the proceedings before the referee.  Since Attorney Trewin was not subject to regulations imposed on commercial lenders, these practices and errors were not corrected over rather lengthy periods.

¶13 The referee found that the clients usually did not negotiate with Attorney Trewin regarding their business transactions because they viewed him as their attorney.  They relied on his expertise and judgment, and believed that he was acting in good faith and looking out for their best interests.

¶14 When the clients fell behind on their loan payments, Attorney Trewin's practice was not to telephone the clients, to deliver a notice of delinquency, or to sue the clients for

eviction or a money judgment.[2] The referee found that Attorney Trewin operated in this manner because he intentionally and consistently wanted to avoid judicial scrutiny of his conduct. Instead of attempting to enforce the terms of the existing notes and mortgages, Attorney Trewin's preferred course of action was to create another loan to those clients. Often the new loan was a mixture of existing indebtedness and new money. When prior loans were paid off or replaced by a new loan, Attorney Trewin did not return the promissory notes for the prior loans.

¶15 Ultimately, when the couples had difficulties making their payments to Attorney Trewin or to another creditor, he would persuade the couple to transfer their property over to him, with the promise that he would lease the property back to them and they could reacquire the property if they were current on their payments to him and could also pay a specified amount to him for their property. The couples, however, were not in a financial condition where they could ever regain ownership of their property. Nonetheless, because of Attorney Trewin's actions, some couples continued to hold the mistaken belief that they really did retain ownership or control of the property even after they had transferred ownership of it to Attorney Trewin. In the end, Attorney Trewin ended up with the title to the clients' real property.

---

[2] Even when Mr. and Mrs. V.H. and Mr. and Mrs. H. stopped making payments to Attorney Trewin years before this disciplinary proceeding, the referee noted that Attorney Trewin had never sued them.

¶16 The referee was particularly moved by one of the exhibits in the Groshek case.  The exhibit contained excerpts from three letters that Attorney Trewin wrote to three different recipients within a span of ten days around the time he was entering into an agreement to buy the Grosheks' property in August 2004, just prior to his law license being suspended.  In the first letter, which was sent to the bank from which he was seeking financing for the transaction, Attorney Trewin said that he had negotiated a purchase price for the Grosheks' property that was below the appraised value of the land and well below what he believed was the fair market value of the land.  He further indicated that he intended to sell 40 acres of the land for an amount that was twice the appraised value to some neighbors of the Grosheks immediately after buying the land from the Grosheks.  Finally, he stated that his intention for the rest of the land was to subdivide most of it into large lots and to rent a small portion, including the existing farmhouse, to the Grosheks.  When Attorney Trewin wrote to the Grosheks just three days later, however, he stated that he would be willing to buy their land for enough money to pay off their existing bank loans, sell approximately 40 acres to the neighbors, and then give them a lease on all the rest of the land with an option to repurchase it.  There was no mention of the sale price being well below fair market value or of subdividing most of the land into lots that would be sold to third parties.  Finally, in the third letter, Attorney Trewin told the Grosheks' current lender that he would be willing to pay that bank for either an

9

assignment of their judgment against the Grosheks or a complete release of the bank's claims. He also claimed (1) that the commitment letter from his own bank referred to the transaction as a purchase of the Grosheks' real property by Attorney Trewin because that was simply his lender's practice and (2) that he really intended to sell the real estate back to the Grosheks. Thus, Attorney Trewin gave three different versions of what would happen in the transaction to three different parties involved in the transaction, depending on what he thought they wanted to hear.

¶17 With respect to two of the client couples, Attorney Trewin contacted them after learning that they had filed grievances against him with the OLR. Mr. V.S. testified that during a couple of telephone calls, Attorney Trewin stated that he was suicidal and asked Mr. V.S. to sign a "waiver," which Mr. V.S. understood to mean that he would not pursue his grievance against Attorney Trewin. Mr. H. described Attorney Trewin's demeanor during a post-grievance telephone call with him as "ugly." Mr. and Mrs. V.S. refused to sign any "waiver" of the grievance, but Mr. and Mrs. H. did sign a document drafted by Attorney Trewin, which stated that they agreed that "the amount owed under the note is $109,643.25" and that they had an option to purchase their former real property for $50,000.00. Mr. and Mrs. H. signed the document, even though they did not know whether it was accurate, because they felt sorry for Attorney Trewin.

10

¶18 Attorney Trewin also failed to provide documents and information requested by the OLR during its grievance investigation concerning Mr. and Mrs. H. This occurred both when the OLR wrote letters to Attorney Trewin asking for certain information and when a member of a district committee tried to meet with Attorney Trewin. Attorney Trewin cancelled the meeting, claiming that he was sick. When the district committee member subsequently wrote to Attorney Trewin asking for documentation of his various transactions with Mr. and Mrs. H., Attorney Trewin asked for an extension of time to respond to the request, but he never followed through with providing the requested documents during the investigation.

¶19 The referee concluded that the OLR had proven four counts of misconduct arising out of Attorney Trewin's actions with respect to Mr. and Mrs. V.S. On Count One, the referee concluded that Attorney Trewin had failed to fully disclose the terms of the various transactions with Mr. and Mrs. V.S. in a manner that they could reasonably understand, in violation of former SCR 20:1.8(a).[3] On Count Two, the referee found that

---

[3] Former SCR 20:1.8(a), in effect prior to July 1, 2007, provides:

A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:

(1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in

(continued)

11

Attorney Trewin's ongoing representation of Mr. and Mrs. V.S. while he had adverse personal interests as a result of his business transactions with them, without obtaining proper waivers, constituted an improper conflict of interest under both former SCR 20:1.7(b)[4] and current SCR 20:1.7(a)(2).[5] On Count

---

writing in a manner that can be reasonably understood by the client;

(2) the client is given a reasonable opportunity to seek the advice of independent legal counsel in the transaction; and

(3) the client consents in writing thereto.

[4] Former SCR 1.7(b), in effect prior to July 1, 2007, provides:

A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) The lawyer reasonably believes the representation will not be adversely affected; and

(2) The client consents in writing after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

[5] SCR 1.7(a)(2) provides:

(a) Except as provided in par. (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

. . . .

(continued)

12

Three, the referee determined that by having Mr. and Mrs. V.S. sign over the deed to their real property when he believed there had been no meeting of the minds, Attorney Trewin had engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, in violation of SCR 20:8.4(c).[6] On Count Four, the referee concluded that Attorney Trewin's attempt to persuade Mr. and Mrs. V.S. to cease cooperating with the OLR's investigation had violated SCRs 22.03(6)[7] and 21.15(4),[8] which are enforceable via SCR 20:8.4(h).[9]

---

(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

[6] SCR 8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[7] SCR 22.03(6) provides that "[i]n the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance."

[8] SCR 21.15(4) provides that "[e]very attorney shall cooperate with the office of lawyer regulation in the investigation, prosecution and disposition of grievances, complaints filed with or by the director, and petitions for reinstatement. An attorney's wilful failure to cooperate with the office of lawyer regulation constitutes violation of the rules of professional conduct for attorneys."

[9] SCR 20:8.4(h) provides that it is professional misconduct for a lawyer to "fail to cooperate in the investigation of a grievance filed with the office of lawyer regulation as required by SCR 21.15(4), SCR 22.001(9)(b), SCR 22.03(2), SCR 22.03(6), or SCR 22.04(1)."

13

¶20 The referee further concluded that the OLR had proven professional misconduct by Attorney Trewin on eight of the nine counts in the complaint that related to Mr. and Mrs. H.[10] Five of those eight counts concern Attorney Trewin's multiple business transactions with Mr. and Mrs. H. On Count Five, the referee determined that Attorney Trewin had violated SCR 20:1.8(a) by disbursing funds to himself as both creditor and attorney from a May 2003 transaction without fully disclosing his adverse interests and without obtaining a written consent for the conflict and the transaction. On Count Six, the referee found that Attorney Trewin had violated both former and current SCR 20:1.8(b)[11] by using in subsequent loan transactions with Mr. and Mrs. H. information regarding their finances that he had gained from representing them as their lawyer. On Count Seven, the referee concluded that Attorney Trewin had violated SCR 20:1.7(a)(2) by continuing to represent Mr. and Mrs. H. when

---

[10] The referee determined that the OLR had failed to meet its burden of proving misconduct by clear, satisfactory, and convincing evidence on Count Ten. That count alleged that Attorney Trewin had violated SCR 20:8.4(c) by providing false information to the OLR during its initial evaluation of the grievance filed by Mr. and Mrs. H.

[11] Former SCR 20:1.8(b), in effect prior to July 1, 2007, provides that "[a] lawyer shall not use information relating to representation of a client to the disadvantage of the client unless the client consents after consultation."

Current SCR 20:1.8(b) provides that "[a] lawyer shall not use information relating to representation of a client to the disadvantage of the client unless the client gives informed consent, except as permitted or required by these rules."

14

he had a personal interest in their finances and property, by "representing" them in a sale of real property to third parties when he had not obtained a written conflict waiver of his personal interests, by paying himself $83,000 in "anticipated taxes" out of the proceeds of a real estate transaction when he never paid those taxes, and by assigning a value to their option to repurchase their land when he had never obtained a prior written agreement with them concerning such a value. On Count Eight, the referee determined that Attorney Trewin had engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, in violation of SCR 20:8.4(c), including (1) having Mr. and Mrs. H. deed their farm to him when he knew that many of the terms of the sale were incomplete and the transaction was invalid under the Statute of Frauds, (2) paying them far less than the value of the property, and (3) reselling the property at a profit for himself. On Count Nine, the referee found that Attorney Trewin had also violated SCR 20:8.4(c) when he had claimed that the deed of the H.s' land was exempt from the real estate transfer tax and had not paid any such tax to the government, but had still collected the amount of the tax from Mr. and Mrs. H. and had subsequently refused to return it.

¶21 The final three counts regarding Mr. and Mrs. H. involve Attorney Trewin's misconduct after they filed a grievance with the OLR. On Count Eleven, the referee concluded that Attorney Trewin had violated SCRs 22.03(6) and 21.15(4), which are enforceable via SCR 20:8.4(h), when he had attempted

15

to persuade Mr. and Mrs. H. to withdraw their grievance or cease cooperating with the OLR's investigation.  On Count Twelve, the referee determined that Attorney Trewin's failure to provide information requested by the district committee had violated SCR 22.04(1).[12]   On Count Thirteen, the referee found that Attorney Trewin had again violated SCR 22.03(6), enforced via SCR 20:8.4(h), when he had failed to provide information and documents requested by the OLR in a timely manner.

¶22  The OLR's complaint alleged only two counts related to Attorney Trewin's conduct concerning the Grosheks.  On Count Fourteen, the referee concluded that Attorney Trewin had violated former SCR 20:1.8(a) by engaging in multiple business transactions with the Grosheks and acquiring their property when (1) the terms of the transactions were not fair and reasonable to the Grosheks, (2) Attorney Trewin had failed to fully and clearly disclose the terms of the proposed transactions to the Grosheks in writing and in a manner they could reasonably understand, and (3) Attorney Trewin had failed to obtain the Grosheks' voluntary written consent to each transaction after consultation.  On Count Fifteen, the referee found that by engaging in a course of conduct that involved dishonesty, fraud,

---

[12] SCR 22.04(1) provides that "[t]he director may refer a matter to a district committee for assistance in the investigation.  A respondent has the duty to cooperate specified in SCR 21.15(4) and 22.03(2) in respect to the district committee.  The committee may subpoena and compel the production of documents specified in SCR 22.03(8) and 22.42."

16

deceit, or misrepresentation in order to serve his own interests rather than the interests of his clients, Attorney Trewin had again violated SCR 20:8.4(c).

¶23 With respect to the proper level of discipline, the referee stated that he had considered Attorney Trewin's prior disciplinary history, his pattern of misconduct in this proceeding, prior precedent, this court's discussions of the concept of progressive discipline, and both aggravating and mitigating factors. The result of the referee's analysis was a conclusion that Attorney Trewin was unfit to practice law in this state and a recommendation that his license should be revoked.

¶24 The referee believed that, in light of the fact that this court has described restitution as the payment of money, see SCR 21.16(2m), monetary restitution would not be appropriate here. The referee agreed with the OLR that monetary restitution is not readily ascertainable in this matter "[d]ue to the mess that [Attorney Trewin] has created."

¶25 Under our longstanding standards for reviewing referee reports in attorney disciplinary proceedings, we will affirm the referee's findings of fact unless they are found to be clearly erroneous, but we review the referee's conclusions of law on a de novo basis. In re Disciplinary Proceedings Against Inglimo, 2007 WI 126, ¶5, 305 Wis. 2d 71, 740 N.W.2d 125. We determine the appropriate level of discipline to impose given the particular facts of each case, independent of the referee's recommendation, but benefiting from it. In re Disciplinary

17

_Proceedings Against Widule_, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶26 Attorney Trewin challenges most of the referee's conclusions of misconduct in his appeal. Although he claims that he is challenging the referee's conclusions of law, many of Attorney Trewin's appellate arguments are focused on criticizing the way in which the referee viewed the facts of this case.

¶27 For example, Attorney Trewin contends that the referee erred on Counts One, Five, and Fourteen in determining that he had violated SCR 20:1.8(a), which prohibits a lawyer from entering into business transactions with clients except in certain specified circumstances. Attorney Trewin contends that the "basic facts" regarding these alleged violations have been undisputed throughout this proceeding. He then proceeds, however, to describe the facts as he believes them to be rather than as found by the referee. Specifically, he asserts, based on his own testimony, that he put the terms of every transaction into writing, gave that writing to the clients, and then advised the clients through a separate conflict of interest document that they had a right to seek independent counsel. He further asserts that both R.V.S. and D.H. also testified that conflict waivers were signed for every transaction.

¶28 The referee specifically discounted the oral testimony in this respect. He agreed with Attorney Trewin that both R.V.S. and D.H. gave muddled, contradictory, and unreliable testimony on many issues, including what documents they had signed. Although Attorney Trewin claimed that he always had

18

clients sign conflict waivers (or consents), the referee noted that his testimony was also contradictory and that he acknowledged that he could not find conflict waivers for some transactions and that he was not sure they were prepared for other transactions.

¶29 Moreover, the referee correctly noted that SCR 20:1.8(a) requires written notices providing certain information to the client and then a written consent to the transaction that is signed by the client. The referee concluded that Attorney Trewin's self-serving testimony that his practice after 2002 was always to provide written conflict waivers was not enough to demonstrate that he had complied with the requirements of SCR 20:1.8(a) on a substantial number of transactions.

¶30 In addition, merely claiming that the clients always signed conflict waivers does not establish what was in those conflict waivers or that the contents of those waivers provided all of the required information. The referee specifically concluded that even for the conflict waivers produced by Attorney Trewin, they did not contain an adequate explanation of the risks of entering into the business transactions with Attorney Trewin while continuing to be represented by him.

¶31 We find no basis to overturn the referee's findings of fact regarding the conflict waivers, or lack thereof. We also agree with the referee's analysis that Attorney Trewin failed to adequately consult with his clients about the risks attendant to the transactions and the conflicts of interest and to prepare a

sufficient writing containing the information required by SCR 20:1.8(a).

¶32 Attorney Trewin also argues that the referee erred in finding violations of former and current SCR 20:1.8(b) in Count Six. He focuses on the referee's reference to the fact that he did not provide to the clients the normal safeguards that are provided by commercial lending institutions to their customers. Attorney Trewin further claims that he did, in fact, explain the transactions to D.H. in a way he could understand. The referee, however, found that there was no record of Attorney Trewin orally discussing with D.H. certain matters related to a transaction. The referee also found D.H. to be credible when he testified that he was baffled by the transaction.

¶33 We again find no basis to overturn any of the referee's factual findings with respect to Attorney Trewin's transactions with Mr. and Mrs. H. Attorney Trewin's argument focusing on the lack of banking safeguards misses the point of the violation found by the referee. The crux of the violation of SCR 20:1.8(b) was that Attorney Trewin used the information he had gained from his representation of Mr. and Mrs. H. to their disadvantage by engaging in a series of transactions that ultimately led to Attorney Trewin owning their property. We conclude that Attorney Trewin did violate both former and current SCR 20:1.8(b).

¶34 Attorney Trewin also challenges the referee's conclusions that he violated SCR 20:8.4(c) on Counts Three, Eight, Nine, and Fifteen. His arguments in this regard again

rely in large part on his view of the facts surrounding various transactions with each of the three client couples. Attorney Trewin's arguments do not rise to the level of demonstrating clear error in the referee's view of the relevant facts.

¶35 Attorney Trewin acknowledges that he claimed an exemption from the transfer tax and did not pay any such tax to the applicable government entity, but he still collected the amount of the tax from Mr. and Mrs. H. He also acknowledges that he did not return the money when he was confronted with this discrepancy. He attempts to excuse his act of collecting money to which he was not entitled and then refusing to return it by claiming that he was ultimately entitled to offset that amount against the amount Mr. and Mrs. H. owed him. He conveniently omits from his argument, however, that there was no finding of fact that he did offset the amount he improperly collected against their indebtedness or that he notified Mr. and Mrs. H. of such an offset. His after-the-fact excuse does not convince us that the referee erred in concluding that this conduct violated SCR 20:8.4(c).

¶36 Attorney Trewin also contends that the referee erred in concluding that he had violated SCR 20:8.4(c) when he had Mr. and Mrs. H. deed over their land to him despite the transaction failing to satisfy the Statute of Frauds and when the value of their property exceeded what Attorney Trewin was paying them for it. We need not conduct a detailed analysis of the Statute of Frauds. Attorney Trewin acknowledges that he testified to a value of the land that was in excess of what he

21

paid his clients for it. He contends that the referee erred in relying on this testimony because he did not say what someone would have needed to do to the land to raise it to that value. His attempt to claim that his valuation testimony was conditioned in some undisclosed manner is unavailing. We conclude that there was sufficient evidence to conclude that Attorney Trewin engaged in dishonesty, deceit, fraud, or misrepresentation when he purchased the property of Mr. and Mrs. H.

¶37 His challenge to the violation found on Count Three also is based on his view of what the evidence showed. The referee determined that Attorney Trewin had violated SCR 20:8.4(c) by having Mr. and Mrs. V.S. deed a piece of their land to him when there had been no meeting of the minds on the overall transaction. Attorney Trewin claims that the referee should have found a meeting of the minds because Mr. and Mrs. V.S. subsequently paid rent to him for that land, which was consistent with his view that they had signed a "life lease" as part of the transaction. He ignores the referee's findings that Mr. and Mrs. V.S. denied ever signing a "life lease" and that no such document was ever produced or introduced into evidence. Relying on one piece of evidence while ignoring other findings of fact does not convince us that the referee erred in either his findings of fact or his conclusion of law on this count. We agree with the referee's conclusion of a violation of SCR 20:8.4(c).

22

¶38 With respect to the finding of a violation of SCR 20:8.4(c) on Count Fifteen regarding his purchase of the Grosheks' property, Attorney Trewin again relies on his version of what occurred. He ignores the transaction documents he had the Grosheks sign just before his license suspension was to take effect in August 2004 and claims that they were represented by separate counsel when the only valid transaction took place later in the fall. He disregards, however, the finding of the circuit court in the civil action that the other attorney retained by the Grosheks acted merely as a scrivener. Moreover, there is no dispute that Attorney Trewin did have the Grosheks sign sale documents in August at a time when he was characterizing the transaction to them in a manner that was contradictory to what he was telling other people and that he never made them aware at that time of the various stories he was telling to others. Whether or not the transaction was ultimately modified at a later date, there is no doubt that Attorney Trewin's conduct prior to his suspension violated SCR 20:8.4(c).

¶39 Attorney Trewin also challenges the referee's conclusions that he interfered with the OLR's investigation by attempting to persuade Mr. and Mrs. V.S. and Mr. and Mrs. H. to withdraw their grievances and cease cooperating with the OLR. The referee found, however, based on the testimony of R.V.S., that Attorney Trewin wanted him to sign a "waiver" that he would not pursue a grievance against Attorney Trewin. The referee likewise found that Attorney Trewin persuaded Mr. and Mrs. H. to

23

sign a document stating their agreement to an amount owed to Attorney Trewin even though they did not know whether that amount was accurate or inaccurate. These findings are sufficient to support the conclusion of improper interference with an ongoing grievance investigation.

¶40 We do not find it necessary to address every claim and argument by Attorney Trewin in this opinion. To the extent we have not addressed arguments here, it is sufficient to say that we have considered them and have rejected them.

¶41 We now turn to the issue of the proper level of discipline. We conclude that the revocation of Attorney Trewin's license to practice law in this state is appropriate and required. Attorney Trewin was already put on notice of the perils of engaging in transactions with clients in the Trewin I disciplinary proceeding. He nonetheless continued to engage in such transactions without meeting the very strict requirements that protect clients from overreaching by more sophisticated attorneys. Moreover, he used the knowledge he had gained from handling the clients' legal matters to structure those transactions in a manner that ensured he would benefit and the clients would not. Those transactions ultimately resulted in Attorney Trewin acquiring the clients' property and enriching himself at their expense. It is clear that the public needs to be protected from this type of conduct and that, as the referee commented, Attorney Trewin is unfit to engage in the practice of law in this state.

¶42 We do not include a restitution award in our order. As noted by the OLR and the referee, there is not a basis in the record of this proceeding to readily ascertain what amount of money should be paid to the three client couples to make them whole.

¶43 Finally, we impose the full costs of this proceeding on Attorney Trewin. Attorney Trewin has been found to have engaged in multiple counts of misconduct. He clearly has litigated this matter aggressively, which has necessitated the expenses incurred by the OLR and the referee. Consequently, we find no basis to depart from our general policy of imposing the full costs on an attorney who has been found guilty of misconduct. See SCR 22.24(1m).

¶44 IT IS ORDERED that the license of Michael G. Trewin to practice law in Wisconsin is revoked, effective November 7, 2014.

¶45 IT IS FURTHER ORDERED that within 60 days of the date of this order, Michael G. Trewin shall pay to the Office of Lawyer Regulation the costs of this proceeding.

¶46 IT IS FURTHER ORDERED that Michael G. Trewin shall comply with the requirements of SCR 22.26 pertaining to the duties of a person whose license to practice law in Wisconsin has been revoked.

25